IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION

MORGAN STANLEY MORTGAGE
CAPITAL  HOLDINGS, LLC, as
Successor in Interest to
MORGAN STANLEY MORTGAGE CAPITAL, INC.                     PLAINTIFF/
                                                  COUNTER-DEFENDANT


VS.                          CIVIL ACTION NO. 3:07-cv-507-WHB-LRA


REALTY MORTGAGE CORPORATION                              DEFENDANT/
                                                   COUNTER-PLAINTIFF

<u>OPINION AND ORDER</u>

This cause is before the Court on the Motion of Counter-Defendant to Dismiss Counterclaim Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  The Court has considered the Motion, Response, Rebuttal, as well as supporting and opposing authorities and finds that the Motion should be granted in part and denied in part.


I.  **Factual Background and Procedural History**

On August 27, 2007, Morgan Stanley Mortgage Capital Holdings, LLC, as successor in interest to Morgan Stanley Mortgage Capital, Inc. ("Morgan Stanley"), filed a lawsuit in this Court against Realty Mortgage Corporation ("Realty") alleging, *inter alia*, that the latter had breached the seller agreements entered by the

parties.[1]  In addition to answering the Complaint, Realty filed a counterclaim against Morgan Stanley alleging the following:

Realty is a mortgage lender that historically had been in the business of marketing prime or traditional mortgage loans.

Morgan Stanley is a national mortgage lender that was in the business of, *inter alia*, developing mortgage loan products including subprime mortgage loans.  Subprime mortgage loan products ("Subprime Products") were developed for the purpose of making mortgage loans to borrowers who did not qualify for prime or traditional mortgage loans because of their credit history or level of income.

Morgan Stanley aggressively promoted its Subprime Products to small mortgage lenders with the intent of profiting from the resale of subprime mortgage loans, or from packaging and selling the loans in the form of mortgage-backed securities.

In 2003, Morgan Stanley promoted its Subprime Products to Realty.  In so doing, Morgan Stanley represented that its Subprime Product, if marketed and used as designed, "would substantially increase Realty's mortgage lending business and create substantial profits for both Realty and Morgan Stanley."

Morgan Stanley represented that it had experience and expertise in the subprime mortgage lending business, and its experience and expertise was superior to that of Realty.

At the time Morgan Stanley promoted its Subprime Products to Realty, it was aware of market research and other information regarding the likelihood of an increase in

---

[1]  Federal subject matter jurisdiction is predicated on diversity of citizenship.  For diversity analysis, Morgan Stanley is a corporate citizen of, and has its principal place of business in, the State of New York; Realty is a corporate citizen of, and has its principal place of business in, the State of Mississippi; and the amount in controversy exceeds $75,000.  Accordingly, the Court may properly exercise federal subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1332.

2

interest rates and/or a decline in housing prices, which could potentially cause a significant number of borrowers to default on their subprime mortgage loans.  Morgan Stanley did not disclose this information to Realty.

Based on the representations made promoting its Subprime Products, Morgan Stanley and Realty entered into a Seller Agreement on September 24, 2003.  Under this agreement, upon demand by Morgan Stanley, Realty was required to repurchase certain subprime mortgage loans.  To repurchase a loan, Realty was required to pay, *inter alia*, the outstanding principal on the loan, accrued interest, a servicing premium, any costs incurred by Morgan Stanley.

The purpose of the repurchasing provisions in the agreements entered by Morgan Stanley and Realty was to place the latter in the "position of an involuntary guarantor of the subprime mortgage loans which were (1) developed by Morgan Stanley, (2) underwritten by Morgan Stanley or underwritten pursuant to Morgan Stanley's guidelines, (3) made to borrowers with credit problems, and (4) approved and purchased by Morgan Stanley with knowledge that a significant number of such loans were made under circumstances which would trigger the repurchase obligations imposed on Realty."

Realty and Morgan Stanley entered additional and/or amended agreements on April 29, 2005, November 10, 2006, and July 1, 2007.

To compensate for changes in market conditions, which increased the likelihood that borrowers would default on subprime mortgage loans, Morgan Stanley amended its guidelines to make it easier for potential borrowers to qualify for subprime loans.  Morgan Stanley did not disclose its actual reasons for amending its guidelines to Realty.

Morgan Stanley "pushed" Realty to make more subprime loans using its Subprime Products and guidelines "knowing the likelihood, but failing to disclose the same to Realty, that more and more borrowers would default" on their loans.

Morgan Stanley represented that it would work with Realty to resolve borrower default issues instead of demanding repurchase of the subprime mortgage loans.  These

3

representations were made to entice Realty to make more loans using Morgan Stanley's Subprime products and guidelines.

"Morgan Stanley never advised Realty that the likely number of defaults by borrowers under circumstances which would trigger the repurchase obligations imposed upon Realty pursuant to the various seller agreements ..., would cause Realty to incur a disproportionate amount of liability and lose every penny it had ever made, and then some, in connection with Realty's use of Morgan Stanley's Subprime Product.

See Countercl. [Docket No. 9], ¶¶ 5-22. Based on these allegations, Realty seeks relief on claims of misrepresentation, breach of the implied duty of good faith and fair dealing, breach of fiduciary duty, and unjust enrichment. Realty also seeks rescission of the various seller agreements it entered with Morgan Stanley, and a declaratory judgment that the repurchasing provisions of those agreements are unenforceable. Morgan Stanley has now moved to dismiss the counterclaims pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.


## II.   Rule 12(b)(6) Dismissal Standard

A motion to dismiss brought pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure is "viewed with disfavor" and "rarely granted." Lowrey v. Texas A & M Univ. Sys., 117 F.3d 242, 247 (5th Cir. 1997). Under Rule 12(b)(6), a party may seek dismissal based on its opponent's "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). When considering a motion to dismiss pursuant to this Rule, the Court

must accept "all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff."  See Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit, 369 F.3d 464, 467 (5th Cir. 2004); Jones v. Greninger, 188 F.3d 322, 324 (5th Cir. 1999).  "To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead 'enough facts to state a claim to relief that is plausible on its face."  See In re Katrina Canal Breaches Litig., 495 F.3d 191, 205 (5th Cir. 2007) (quoting Bell Atl. Corp. v. Twombly, --- U.S. ---, 127 S. Ct. 1955, 1974 (2007).[2]  "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."  Id. (quoting Bell Atl., 127 S. Ct. at 1965).

---

[2]  This standard differs from the Rule 12(b)(6) standard heretofore applied in this Circuit.  As explained by the United States Court of Appeals for the Fifth Circuit:  We have often stated that a claim should not be dismissed under Rule 12(b)(6) unless the plaintiff would not be entitled to relief under any set of facts or any possible theory he may prove consistent with the allegations in the complaint.  See, e.g., Martin K. Eby Constr., 369 F.3d at 467 (quoting Jones, 188 F.3d at 324).  This standard derived from Conley v. Gibson, which stated that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  355 U.S. 41, 45-46 (1957).  But recently in Bell Atlantic, the United States Supreme Court made clear that the Conley rule is not "the minimum standard of adequate pleading to govern a complaint's survival."  127 S. Ct. at 1968-69.

### III.  Legal Analysis

**A.  Misrepresentation**

In support of its Motion to Dismiss, Morgan Stanley first argues that Realty failed to plead all of the elements required to state an actionable claim of fraudulent misrepresentation.  In response, Realty has clarified that its claim for misrepresentation is predicated on negligence, not on fraud.  <u>See</u> Mem. in Supp. of Resp. [Docket No. 24], at 10 ("There are no allegations of fraudulent misrepresentation contained in the counterclaim.").  To establish an actionable claim for negligent misrepresentation under Mississippi law, the pleader must show:

> (1) a misrepresentation or omission of a fact; (2) that the representation or omission is material or significant; (3) that the defendant failed to exercise that degree of diligence and expertise the public is entitled to expect of it; (4) that the plaintiff reasonably relied on the defendant's representations; and (5) that the plaintiff suffered damages as a direct and proximate result of his reasonable reliance.

<u>Moran v. Fairley</u>, 919 So. 2d 969, 973 (Miss. Ct. App. 2005) (quoting <u>Skrmetta v. Bayview Yacht Club, Inc.</u>, 806 So. 2d 1120, 1124 (Miss. 2002)).  In the case *sub judice*, Realty alleges:

> Morgan Stanley, in the promotion of its Subprime Product to Realty, both prior to and during the terms of the various seller agreements ..., misrepresented facts concerning the quality of its Subprime Product and the potential liability associated with the use of such product and omitted or failed to disclose facts to Realty concerning research and other information relating to the likelihood of an increase in interest rates and/or a decline in housing prices and values which would create the potential for a significant number of borrower defaults on the subprime mortgage loans promoted by

6

Morgan Stanley.

Morgan Stanley's misrepresentations and/or omissions of fact were material and/or significant in connection with Realty's entering into the various seller agreements with Morgan Stanley and using Morgan Stanley' Subprime Product.

Morgan Stanley failed to exercise reasonable care in making these misrepresentations to Realty and/or in failing to disclose these facts to Realty.

Realty relied on Morgan Stanley's misrepresentations and/or omissions of fact and has been damaged thereby in an amount to be determined at trial.

See Countercl., at ¶¶ 24-27.  After reviewing the pleadings, the Court is satisfied that Realty has pleaded an actionable negligent misrepresentation claim.

Morgan Stanley also seeks dismissal of the misrepresentation claim arguing that it is barred by the defenses of puffery and waiver.  On the issue of whether a claim may be dismissed under Rule 12(b)(6) on the basis of an affirmative defense, the Fifth Circuit has recognized that dismissal may be permitted "only if an affirmative defense or other bar to relief appears on the face of the complaint."  Garrett v. Commonwealth Mortg. Corp. of Am., 938 F.2d 591, 594 (5th Cir. 1991).  See also Kansa Reinsurance Co., Ltd. v. Congressional Mortg. Corp. of Tex., 20 F.3d 1362, 1366 (5th Cir. 1994) (finding that "when a successful affirmative defense appears on the face of the pleadings, dismissal under Rule 12(b)(6) may be appropriate.").

In support of its puffery defense, Morgan Stanley correctly argues that a claim for negligent misrepresentation cannot be based on representations regarding future performance or anticipatory promises. See Morgan, 919 So. 2d at 973 ("The first element of negligent misrepresentation, misrepresentation of a fact, must concern a past or present fact, as contrasted with a promise of future conduct."); Spragins v. Sunburst Bank, 605 So. 2d 777, 780 (Miss 1992) (finding that to support a negligent misrepresentation claim, the misrepresentation must "concern a fact, rather than an opinion", and "must concern a past or present fact as contrasted with a promise of future conduct."). In the case *sub judice*, some of the misrepresentations cited by Realty could arguably qualify as opinions or promises regarding future conduct and/or anticipated occurrences. Realty, however, has also alleged that Morgan Stanley, at the time the various seller agreements were entered, failed to disclose research and information then in its possession regarding the likelihood of an increase in interest rates and/or a decline in housing prices and the manner in which such changes would impact on the number of borrowers defaulting on their subprime mortgage loans. As Realty has alleged that the misrepresentations and/or omissions made by Morgan Stanley concerned information in its possession at the time the misrepresentations and/or omissions were made, the Court cannot conclude that the defense of puffery appears on the face of the

Counterclaim.

Morgan Stanley also argues that dismissal of the misrepresentation claim is warranted because Realty waived the right to contest any prior misrepresentations by entering into subsequent seller agreements.  Under Mississippi law, it is well settled law that a contract obtained by fraud is "not void, but voidable," and that upon the discovery of the fraud, "the one defrauded must act promptly and finally to repudiate the agreement [because] a continuance to ratify the contract terms constitutes a waiver."  Turner v. Wakefield, 481 So. 2d 846, 848-849 (Miss. 1985).  In the case sub judice, the Court finds that the defense of waiver does not appear on the face of the Counterclaim.

First, under Mississippi law, it appears the defense of waiver is available in cases in which a claim of fraud is alleged.  Here, as discussed above, Realty has not alleged a claim of fraud but, instead, predicates its misrepresentation claim on acts of negligence.  Morgan Stanley has not cited any cases in which the Mississippi appellate courts, or federal courts applying law Mississippi law, have extended the waiver defense to cases involving negligent misrepresentation.

Second, it is not apparent from the face of the Counterclaim that Realty knew of the alleged negligent misrepresentations and/or omissions at the time the subsequent seller agreements were entered.  Although Morgan Stanley argues that Realty "was fully

9

aware of both market conditions and the potential for default by borrowers at the time it voluntarily entered into [the] fourth seller agreement" <u>see</u> Mem. in Supp. of Mot. to Dismiss, at 9, there is nothing on the face of the pleadings that support this assertion or otherwise conclusively show that Realty had knowledge of the alleged misrepresentations and/or omissions at the time the subsequent seller agreements were entered

In sum, the Court finds that Realty has alleged the elements necessary to state an actionable claim for negligent misrepresentation under Mississippi law, and that the affirmative defenses of puffery and waiver do not appear on the face of the pleadings. Accordingly, the Court finds that the Motion of Morgan Stanley to Dismiss the negligent misrepresentation claim under Rule 12(b)(6) should be denied.


**B.  Breach of Implied Duty of Good Faith and Fair Dealing**

Under Mississippi law, "[A]ll contracts contain an implied covenant of good faith and fair dealing in performance and enforcement." <u>Cenac v. Murry</u>, 609 So. 2d 1257, 1272 (Miss. 1992). This duty has been interpreted as follows:

> [The duty of good faith and fair dealing] is based on fundamental notions of fairness, and its scope necessarily varies according to the nature of the agreement. Some conduct, such as subterfuge and evasion, clearly violates the duty. However, the duty may not only proscribe undesirable conduct, but may require affirmative action as well. A party may thus be under a duty not only to refrain from hindering or preventing the

occurrence of conditions of his own duty or the performance of the other party's duty, but also to take some affirmative steps to cooperate in achieving these goals.

Good faith is the faithfulness of an agreed purpose between two parties, a purpose which is consistent with justified expectations of the other party. The breach of good faith is bad faith characterized by some conduct which violates standards of decency, fairness or reasonableness.

Id. (citations omitted).

In its Counterclaim, Realty alleges that Morgan Stanley breached its duty of good faith and fair dealing by (1) "lowering its underwriting standards and qualifications for approval of potential borrowers for subprime mortgage loans ... which increased the likelihood of default by such borrowers" and (2) "pushing Realty to make more and more subprime mortgage loans using Morgan Stanley's Subprime Product without disclosing ... the market research and other information it had." See Countercl. at ¶ 31. Again, after reviewing the pleadings, the Court is satisfied that Realty has pleaded an actionable breach of good faith and fair dealing claim.

Morgan Stanley argues that Realty has no possibility of recovering on this claim because, in altering its underwriting standards, it acted in accordance with the terms of the various seller agreements entered by the parties. See Mem. in Supp. of Mot. to Dismiss, 12 (citing Wilson v. Ameriquest Mortg. Co., Civil Action No. 5:05-cv-122, 2006 WL 2594522, at *5 (S.D. Miss. Sept. 8,

2006) for the proposition that: "Generally, as a matter of law, when a party acts in accordance with the express terms of a contract, the implied covenants of good faith and fair dealing have not been violated."). As understood by the Court, however, the breach of good faith and fair dealing claim alleged by Realty is not based on the fact that Morgan Stanley altered its underwriting standards but, instead, is predicated on the manner in which those standards were altered. Specifically, Realty alleges that Morgan Stanley altered its underwriting standards in such a manner so as to increase the likelihood that borrowers would default on their subprime loans, which, in turn, would trigger the repurchase provisions of the various seller agreements to the detriment of Realty. Thus, based on its reading of the Counterclaim, the Court cannot conclude that the argument raised by Morgan Stanley in defense of the good faith and fair dealing claim appears on the face of the Counterclaim.

With respect to the allegations that Morgan Stanley breached the duty of good faith and fair dealing by failing to disclose market research and other information in its possession, Morgan Stanley argues that the claim fails because it does not "account for the general principle that each party in a business agreement has a duty to conduct their own due diligence." See Mem. in Supp. of Mot. to Dismiss, 13. The Court finds that this defense, if viable, does not appear on the face of the Counterclaim. As

12

neither of the defenses raised by Morgan Stanley appear on the face of the Counterclaim, the Court finds that its Motion to Dismiss the breach of good faith and fair dealing claim under Rule 12(b)(6) should be denied.

## C.  Breach of Fiduciary Duty

Realty claims that a fiduciary relationship existed between it and Morgan Stanley based on allegations that include: (1) the "activities of Morgan Stanley and Realty went beyond their operating on their own behalf and ... were for the benefit of both Morgan Stanley and Realty"; (2) "Morgan Stanley and Realty had a common interest in Morgan Stanley's Subprime Product in that both were to profit from the activities of the other in connection therewith"; (3) "Morgan Stanley and Realty reposed trust in one another"; and (4) "Morgan Stanley developed its Subprime Product without input from Realty and had exclusive control over the underwriting standards for such product."  See Countercl., ¶ 36. Realty further alleges that Morgan Stanley breached its fiduciary duties by "lowering its underwriting standards and qualifications for approval of potential borrowers for subprime mortgage loans ... which increased the likelihood of default by such borrowers" and by "pushing Realty to make more and more subprime mortgage loans using Morgan Stanley's Subprime Product without disclosing ... the market research and other information it had."  See Countercl. at ¶ 36.

13

Morgan Stanley has moved for dismissal of the breach of fiduciary duty claim arguing that a fiduciary relationship did not exist between the parties as a matter of Mississippi law.

> Under Mississippi law:
>
> Although every contractual agreement does not give rise to a fiduciary relationship, such relationship may exist under the following circumstances: (1) the activities of the parties go beyond their operating on their own behalf, and the activities for the benefit of both; (2) where the parties have a common interest and profit from the activities of the other; (3) where the parties repose trust in one another; and (4) where one party has dominion or control over the other.

Hopewell Enters., Inc. v. Trustmark Nat'l Bank, 680 So. 2d 812, 816 (Miss. 1996) (citing Carter Equip. Co. v. John Deere Indus. and Equip. Co., 681 F.2d 386 (5th Cir. 1982)).  See also AmSouth Bank v. Gupta, 838 So. 2d 205, 216 (Miss. 2002) (explaining that Mississippi courts apply the following three-part test when determining whether a fiduciary relationship exists in a commercial transaction: "whether (1) the parties have shared goals in each other's commercial activities, (2) one of the parties places justifiable confidence or trust in the other party's fidelity, and (3) the trusted party exercises effective control over the other party.").

Although it appears that the various seller agreements entered by the parties were arm-length transactions from which no fiduciary duty could arise, the Court is mindful that, under Mississippi law, the determination of whether a fiduciary relationship exists is

14

generally a question of fact.  See e.g. Lowery v. Guaranty Bank & Trust Co., 592 So. 2d 79, 85 (Miss 1991) ("The determination of what constitutes a confidential or fiduciary relationship is a question of fact."); Geisenberger v. John Hancock Distribs., Inc., 774 F. Supp. 1045, 1052 (S.D. Miss. 1991) (same).  As such, the Court finds that the issue of whether a fiduciary duty existed is one that should be determined either on a motion for summary judgment or at trial.  Accordingly, the Court finds that the Motion of Morgan Stanley to Dismiss the breach of fiduciary duty claim should be presently denied.


**D.  Unjust Enrichment**

Under Mississippi law:

> The doctrine of unjust enrichment or recovery in quasi contract applies to situations where there is no legal contract but where the person sought to be charged is in possession of money or property which in good conscience and justice he should not retain but should deliver to another, the courts imposing a duty to refund the money or the use value of the property to the person to whom in good conscience it ought to belong.

Kersey v. Fernald, 911 So. 2d 994, 997 (Miss. Ct. App. 2005).  In cases, however, in which a legally binding, written contract exists between the parties, "damages based on claims of unjust enrichment are not an appropriate remedy."  Johnston v. Palmer, 963 So. 2d 586, 596-97 (Miss. Ct. App. 2007).

In the case *sub judice*, the parties do not dispute whether they entered legally binding, written sellers agreements.

Additionally, the unjust enrichment claim alleged by Realty is predicated on those agreements. See e.g. Countercl. at ¶ 44 (alleging: "Morgan Stanley has been unjustly enrich[ed] by the profits it has earned from the re-sell of subprime mortgage loans purchased from Realty."). See also Mem. in Supp. of Resp. to Mot. to Dismiss, 20-21 (arguing that "Realty made the loans which became subject to the repurchase and/or indemnification provisions"; "the repurchase and/or indemnification provisions were used by Morgan Stanley to recoup all losses from Realty"; and "Morgan Stanley has been unjustly enriched because it insulated itself from loss by requiring that Realty payback all compensation realty earned in closing mortgage loans using Morgan Stanley Subprime Product and underwriting guidelines.").

The Court finds that as Mississippi does not allow damages to be recovered for unjust enrichment in cases in which a legally binding, written contract exists between the parties, the unjust enrichment claim pleaded by Realty is not plausible on its face. Accordingly, the Court finds that this claim should be dismissed pursuant to Rule 12(b)(6).

## E.  Rescission of the Seller Agreements

Realty seeks rescission of the various seller agreements entered by the parties based on the alleged misrepresentations made by Morgan Stanley. Under Mississippi law, a court may grant relief

from a contract on the bases of mutual mistake or false representations. See Godfrey, Bassett & Kuykendall Architects, Ltd. v. Huntington Lumber & Supply Co., Inc., 584 So. 2d 1254, 1258 (Miss. 1991); McGee v. Clark, 343 So. 2d 486, 488 (Miss. 1977) (finding that a contract may be declared void based on a misrepresentation if "the representation was material, it induced the [claimant] to execute the ... agreement, and it was false. The result ... is the same regardless of whether the misrepresentation was wilfully and knowingly made or whether it was innocently made."). See also Ezell v. Robbins, 533 So. 2d 457, 461 (Miss. 1988) (finding that a contract "will not be rescinded except on the grounds of fraud or mistake" and that "rescission of [a] contract ... require[s] proof of fraud by clear and convincing evidence.").

In the case *sub judice*, Realty has alleged, *inter alia*, that Morgan Stanley misrepresented facts "concerning the quality of its Subprime Product and the potential liability associated with the use of such product." See Countercl., ¶ 24. Further, Realty alleges that the alleged misrepresentations were material, and were "significant in connection with Realty's entering into the various seller agreements with Morgan Stanley." Id. at ¶ 25. As discussed above, the Court finds these allegations are sufficient to plead a viable misrepresentation claim. As such, the Court additionally finds that these allegations are sufficient to give rise to the remedy of rescission under Mississippi law. Accordingly, the Court finds that the Motion of Morgan Stanley to Dismiss the request for

17

rescission of the various seller agreements should be denied.


**F.   Declaratory Relief**

Through its Counterclaim, Realty claims that it is "entitled to declaratory relief directing that the repurchase and/or indemnification provisions in the various seller agreements between Morgan Stanley and [it] are overreaching or unconscionable and therefore such provisions are unenforceable." <u>See</u> Countercl. at ¶ 48.  In support of this claim, Realty alleges: "Realty can follow Morgan Stanley's instructions and guidelines and do nothing wrong, but still be required under the various seller agreements to repurchase subprime mortgage loans sold to Morgan Stanley and/or indemnify Morgan Stanley for losses it has occurred as a result of Morgan Stanley's own acts or omissions." <u>Id.</u>, at ¶ 46.

The Mississippi Supreme Court has defined unconscionability as:

> [A]n absence of meaningful choice on the part of one of the parties, together with contract terms which are unreasonably favorable to the other party.  To show that a provision is conscionable, the party seeking to uphold the provision must show that the provision bears some reasonable relationship to the risks and needs of the business.

<u>Entergy Miss., Inc. v. Burdette Gin Co.</u>, 726 So. 2d 1202, 1207 (Miss. 1998).  Two types of unconscionability are recognized under Mississippi law, procedural unconscionability and substantive unconscionability.  Procedural unconscionability is generally predicated on either a lack of knowledge or lack of voluntariness.

18

Id.

>     A lack of knowledge is demonstrated by a lack of
>     understanding of the contract terms arising from
>     inconspicuous print or the use of complex, legalistic
>     language, disparity in sophistication of parties, and
>     lack of opportunity to study the contract and inquire
>     about contract terms.   A lack of voluntariness is
>     demonstrated in contracts of adhesion when there is a
>     great imbalance in the parties' relative bargaining
>     power, the stronger party's terms are unnegotiable, and
>     the weaker party is prevented by market factors, timing
>     or other pressures from being able to contract with
>     another party on more favorable terms or to refrain from
>     contracting at all.

Id. (quoting Bank of Ind., Nat'l Ass'n v. Holyfield, 476 F. Supp.
104, 109-10 (S.D. Miss. 1979).   Substantive unconscionability is
proven by showing the terms of an agreement are oppressive.
Community Care Ctr. of Vicksburg, LLC v. Mason, 966 So. 2d 220, 230
(Miss. Ct. App. 2007).   Thus, substantive unconscionability may be
shown in cases in which there "is a one-sided agreement whereby one
party is deprived of all the benefits of the agreement or left
without a remedy for another party's nonperformance or breach" or
if "abuses within specific terms of the agreement which would
violate the expectations of, or cause gross disparity between,
contracting parties." Id. at 230-31 (citations omitted).

    After reviewing all the allegations in the Counterclaim,
including those alleged in support of the request for declaratory
relief, the Court is satisfied that Realty has pleaded an
actionable claim for unconscionability and has likewise pleaded an
actionable claim for declaratory relief.   Accordingly, the Court

finds that the Motion of Morgan Stanley to Dismiss the request for declaratory relief on the grounds of unconscionability should be denied.


## Iv.   Conclusion

For the foregoing reasons:

IT IS THEREFORE ORDERED that the Motion of Counter-Defendant Morgan Stanley Mortgage Capital Holdings, LLC., to Dismiss Counterclaim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure [Docket No. 15] is hereby granted in part and denied in part.

The counterclaim of unjust enrichment is hereby dismissed.

The counterclaims of misrepresentation, breach of the implied duty of good faith and fair dealing, breach of fiduciary duty, rescission of seller agreements, and for declaratory relief remain for trial.

IT IS FURTHER ORDERED that nothing in this Opinion and Order bars Counter-Defendant from re-pleading the defenses and arguments raised in this Motion in a subsequent motion for summary judgment and/or at trial.

SO ORDERED this the 11th day of September, 2008.


s/William H. Barbour, Jr.
UNITED STATES DISTRICT JUDGE


20